**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-40169

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

CHARLES T. WICKERSHAM,

Defendant - Appellant.

Appeal from the United States District Court
For the Eastern District of Texas
(1:92-CR-98-1)

February 4, 2003

Before JOLLY, DUHÉ, and WIENER, Circuit Judges.

PER CURIAM:[1]

Charles T. Wickersham appeals the denial of his petition for
the writ of <u>coram nobis</u>. Because the error Wickersham urges falls
below the rigorous standard for <u>coram nobis</u> relief, we affirm.

**I. FACTUAL AND PROCEDURAL HISTORY**

Charles T. Wickersham sold a grain elevator to the Port of
Orange at a profit of approximately $350,000. Wickersham deferred

---

[1] Pursuant to 5th Circuit Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5th Circuit
Rule 47.5.4.

recognition of this income under Internal Revenue Code § 1033, which allows taxpayers to defer recognition of capital gains from sales taking place under a threat of condemnation. The sale was publicized and controversial; one dissenter, former Port of Orange Commissioner Curtis Smith, wrote letters to the editor expressing his disapproval. Smith also complained to family friend Judy Stanley, a special agent for the Internal Revenue Service. Agent Stanley was the daughter of Smith's former business partner, and during her service as executor of her father's estate, she often sought Smith's guidance in conducting the affairs of the estate. Smith wrote several checks to Agent Stanley, apparently to service a mortgage encumbering estate property until it could be sold. One check was written the day Smith complained to Agent Stanley about the grain elevator sale.

Agent Stanley commenced an investigation that culminated in Wickersham's prosecution and conviction for making a false statement on his tax return in violation of 26 U.S.C. § 7206(1). Wickersham's conviction required the jury to conclude that he knew the grain elevator was not truly under a threat of condemnation. Agent Stanley's testimony dealt neither with the existence of a threat of condemnation nor with Wickersham's knowledge of such a threat. Rather, she described his tax liability assuming the sale was not under a threat of condemnation, testifying that Wickersham failed to report capital gain of $349,641 and pay the $97,899 tax owed on the gain. Testimony from other witnesses, who unlike Agent

2

Stanley had knowledge of the events surrounding the sale, allowed the jury to conclude that a threat of condemnation was absent. At the time of the trial, neither the government nor Wickersham was aware of Agent Stanley's relationship with Curtis Smith or that he had alerted her to the sale in question. Wickersham's conviction was affirmed by this Court in United States v. Wickersham, 29 F.3d 191 (5th Cir. 1994).

After completing his sentence, Wickersham learned of the relationship between Smith and Agent Stanley. Wickersham petitioned for a writ of error coram nobis, arguing that his conviction was obtained in violation of Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). The district court rejected the petition, concluding that the material portion of Agent Stanley's testimony dealt with tax calculations, and her possible impeachment, had Wickersham known about her relationship with Smith, would not have resulted in a different outcome. Wickersham now appeals.

## II. DISCUSSION

The Supreme Court has held the writ of error coram nobis to be available under the All Writs Act, 28 U.S.C. § 1651(a).[2] The writ is a remedy of last resort for a petitioner no longer in custody who suffers civil disabilities as a consequence of a criminal

---

[2] The All Writs Act states: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

conviction and who seeks to vacate the conviction for errors "'of the most fundamental character.'" United States v. Morgan, 346 U.S. 502, 512-13 (1954)(quoting United States v. Mayer, 235 U.S. 55, 69 (1914)).   To warrant this extraordinary relief, the complained-of error must work a "complete miscarriage of justice." United States v. Bruno, 903 F.2d 393, 396 (5th Cir. 1990).[3]

Brady held that suppression of evidence favorable to the accused and material to his guilt or punishment violates due process regardless of the good faith of the prosecution.  Brady, 373 U.S. 83, 87-88.  Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. Id.  A "reasonable probability" is one "sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985).  Failure by the prosecution to disclose impeachment evidence justifies a new trial if the "'reliability of a given witness may well be determinative of guilt or innocence.'" Giglio, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (quoting Napue v. Illinios, 360 U.S. 264, 269, 79 S. Ct. 1173 , 1177 (1959)).   The

_____

[3] The government contends that the writ is unavailable to correct Brady violations because Mayer described the writ as unavailable to correct "prejudicial misconduct in the course of trial, the misbehavior or partiality of jurors, and newly discovered evidence." 235 U.S. at 69.  This argument is without merit.  We look to Morgan for the modern scope of the writ, and we have recognized its availability to correct a Brady violation resulting in a "complete miscarriage of justice."  Jimenez v. Trominski, 91 F.3d 767, 768 (5th Cir. 1996).

4

evidence must be more than useful to the defense; it must be likely to change the verdict. Id.

Assuming without deciding that Agent Stanley's failure to disclose her relationship with Curtis Smith was error, we conclude that Wickersham has not demonstrated the "complete miscarriage of justice" required for a writ of coram nobis. The question underlying the falsity of Wickersham's tax return was whether he sold the grain elevator under threat of condemnation by the Port of Orange. The material portion of Agent Stanley's testimony dealt with the tax owed by Wickersham if indeed the threat was absent. Testimony other than that by Agent Stanley persuaded the jury that Wickersham knew the grain elevator was not under a threat of condemnation. Although Agent Stanley's impeachment might have been helpful to the defense, we are sufficiently confident in the outcome of Wickersham's prosecution to conclude that no miscarriage of justice has occurred. We affirm the judgment of the district court denying coram nobis relief.

AFFIRMED

5